IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JESUS QUINTANA ALMANZA                                              PLAINTIFF

VS.                                            NO. 06-2009

SHERIFF FRANK ATKINSON, NURSE
CRYSTAL REED and CAPT. CONGER                           DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Jesus Almanza brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. While he was incarcerated at the Sebastian County Jail, Almanza contends his federal constitutional rights were violated in the following ways: (1) by the denial of medical care because he did not have the money to pay for said care and (2) by the denial of medication.

On July 3, 2006, defendants filed a motion for summary judgment (Doc. 19). On July 27, 2006, the undersigned entered an order (Doc. 22) directing the plaintiff to complete, sign and return an attached questionnaire that would serve as his response to the motion for summary judgment. On August 14, 2006, plaintiff's response to the court's questionnaire (Doc. 23) was filed. The case is currently before the undersigned for the issuance of a report and recommendation on the summary judgment motion.

### I. BACKGROUND

Almanza was booked into the Sebastian County Detention Center (SCDC) on March 22, 2005. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. On March 22, 2005, an immigration detainer was placed on him by Department of Justice, pending an investigation to determine whether he should be removed from the country. ¶ 2.

On April 21, 2005, plaintiff submitted a request for medical care. ¶ 3. He indicated that his

1

toe nail had come off and was hurting.  Nurse Collier examined him and determined that he had a fungus on his right toenail and that his left toenail was too short.  ¶ 4.  She prescribed antifungal cream for the right toe and "TAO" for the left toe.

On June 29, 2005, plaintiff was tested for Tuberculosis by the Arkansas Department of Health.  ¶ 5.  Although no signs of infection were noted, plaintiff was given a preventative prescription.  On August 3, 2005, plaintiff was sent to the Health Department for a follow-up.  ¶ 7.

On September 6, 2005, plaintiff complained of left kidney pain.  ¶ 8.  He was examined by Nurse Reed.  A urinalysis revealed clear, yellow urine.  As such, Nurse Reed instructed him to drink more fluids.  However, because he was taking Isoniazid, she had to notify the Health Department of his symptoms.  Nurse Reed noted that plaintiff would be seen by a doctor if his symptoms persisted.

On September 9, 2005, plaintiff submitted a medical request.  ¶ 9.  He stated that his kidney pain persisted, in spite of drinking water.  Plaintiff also complained of problems urinating.  The nurse treated him on September 12, 2005, and noted that he needed to be seen by a doctor.  ¶ 10.  Plaintiff was examined by Dr. Tinsman and Nurse Reed on September 15, 2005.  ¶ 11.  Dr. Tinsman diagnosed him with left flank pain.  A CT scan of plaintiff's abdomen revealed no evidence of a renal calculus or urinary tract obstruction.  ¶ 12; Doc. 21-2.

On September 23, 2005, plaintiff again requested medical treatment.  ¶ 13.  He indicated that the pain had only subsided for a little bit and that he continued to have problems with urination.  Nurse Reed examined plaintiff and noted that a previous urine sample and CT scan had revealed no obstruction.  *Id*. at ¶ 14.  However, she moved plaintiff to a hospital cell for observation.  Nurse Reed indicated that plaintiff would be taken to the emergency room if his symptoms worsened.  On

September 29, 2005, plaintiff was seen by Dr. Tinsman. *Id*. at ¶ 17(A). He diagnosed plaintiff with chronic urinary retention and referred him to a urologist for a cystoscopy. This same date, Nurse Reed scheduled plaintiff for an appointment with the urologist. *Id*. at ¶ 17(B).

On October 25, 2005, Dr. Wannan, a urologist, treated plaintiff. *Id*. at ¶ 18. He prescribed Bactrim. This same date, plaintiff submitted another medical request stating that he was having the same problems as before–trouble urinating and back problems. *Id*. at ¶ 19(A). He also complained of an eye irritation. Plaintiff stated that his back problems were related to his problems with urination. *Id*. at ¶ 19(B). However, he indicated that he was not treated for his irritation. *Id*. at ¶ 19(C).

On November 8, 2005, plaintiff submitted a medical request stating that he had a bladder infection. *Id*. at ¶ 20. Although he had been prescribed medication to treat this infection, plaintiff stated that he had not received his medication in four days. However, he also stated that he did not feel any change in his condition.

On December 22, 2005, plaintiff again requested medical treatment. *Id*. at ¶ 23. He indicated that the medication he was receiving was not helping and requested that he receive the correct medication. Plaintiff also stated that he had reported his fall to the nurse but that nothing had been done. He indicated that he had hit his collar bone during the fall. On his medical request form, plaintiff also requested eye drops. He stated that he had been spayed with pepper spray. However, plaintiff alleged that he had not been involved in the incident that gave rise to the jailers use of pepper spray.

On December 23, 2005, plaintiff was treated by Nurse Reed for complaints of continued urinary tract problems. *Id*. at ¶ 25. She told him that he was no longer in the custody of the United

3

States Marshals Service and would be responsible for the cost of your own medical care. Plaintiff told Nurse Reed that he still wanted to see a doctor. Nurse Reed indicated that she would arrange for him to see Dr. Tinsman. At that time, she did not notice any problems that warranted emergency medical treatment.

On January 10, 2006, Nurse Reed told plaintiff that his family would need to arrange a follow-up visit for him with the urologist. *Id*. at ¶ 27. She indicated that his family might have to pre-pay for this visit. Nurse Reed instructed plaintiff that the doctor's office would need to phone her to let her know the appointment time and date. However, plaintiff did not have his family set up an appointment with the urologist. *Id*. at ¶ 28.

On February 6, 2006, plaintiff was sentenced to thirty years. *Id*. at ¶ 29.

On February 17, 2006, plaintiff was again seen by Nurse Reed. *Id*. at ¶ 30(A). He complained of continued problems with urination and stated that he was having a hard time sitting down. He told Nurse Reed that he had spoken to her about these symptoms before and she indicated that he had been previously seen by Dr. Tinsman and a urologist. Plaintiff also told Nurse Reed that he had injured his tailbone in May or June and had been experiencing constipation. *Id*. at ¶ 30(C). He stated that his urinary problems could be related to this injury. Plaintiff also complained of dizziness and eye problems, resulting from being sprayed with pepper spray. Further, he told Nurse Reed that he had not been receiving his medication as prescribed. *Id*. at ¶ 30(D). Nurse Reed indicated that the medication was sent to the pod and handed out at medication times. However, she told plaintiff that she would arrange for him to see Dr. Tinsman. *Id*. at ¶ 30(E).

On February 21, 2006, plaintiff told Nurse Reed that he had put in a medical request three weeks after he fell. *Id*. at ¶ 31. He stated that he was upset because he believed he was being denied

medical treatment. Nurse Reed told him that he was not being denied medical attention and needed to tell her what was wrong. She noted that he complained of the same symptoms he had reported the last time he was in her office. He also stated that he was still dizzy. Nurse Reed told plaintiff that he could have a laxative and Ibuprofen for the pain. *Id*. at ¶ 32. She also stated that she could not find any reports that he had been injured. Plaintiff asked Nurse Reed if the INU he was taking could be responsible for his problems. *Id*. at ¶ 33(B). Nurse Reed called the health department and was told that his symptoms did not match any reports they had received concerning the side effects of that medication. Nurse Reed also told plaintiff that she would talk to Dr. Tinsman about his situation and would speak tot he jail administration concerning plaintiff's medical. She acknowledged that plaintiff wanted the jail to pay for his visit to the urologist since he had no one to arrange an appointment for him. *Id*. at ¶ 33(C). However, after speaking to Captain Conger, Nurse Reed was informed that plaintiff would have to have his family arrange the appointment with the urologist. *Id*. at ¶ 34.

On February 28, 2006, plaintiff requested medical care. *Id*. at ¶ 35. He indicated that he had already described his problems and that it had been two weeks since he was told he would see a doctor. This same date, Dr. Tinsman examined plaintiff and ordered x-rays of his coccyx. *Id*. at ¶ 36. He diagnosed plaintiff with a coccygeal contusion with neurological contusion. He was advised to increase his fiber intake and Fibercon was prescribed.

On March 2, 2006, plaintiff was taken to St. Edwards Mercy Medical Center for x-rays. *Id*. at ¶ 37. Frontal and lateral views revealed no evidence of fracture or dislocation. However, it was noted that the upper sacrum was not fully included on the frontal view. After returning to the jail, plaintiff asked Nurse Reed why he had to pay for his x-rays. *Id*. at ¶ 38. She explained to him that

there was only a detainer on him from the United States Marshals Service and the Arkansas Department of Corrections had not yet placed put him on their list to pay for medical expenses.

On March 14, 2006, plaintiff saw Dr. Tinsman for a follow-up concerning his x-rays. *Id*. at ¶ 40. Dr. Tinsman noted that plaintiff had a coccyx contusion and recommended stretching.

On March 22, 2006, plaintiff was transferred to the Arkansas Department of Corrections. *Id*. at ¶ 41. Upon intake, plaintiff reported urinary problems as well as problems with constipation. *Id*. at ¶ 33. He was referred to a doctor and prescribed fiber tablets. *Id*. at ¶ 44. In spite of this, however, plaintiff has reported continued problems with urination. *Id*. at ¶ 46. Plaintiff has also reported continued eye problems and dizzy spells. *Id*. at ¶ 47.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case

founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

Defendants have now moved for summary judgment. (Doc. 19). First, defendants argue that vicarious liability does not exist under the various federal civil rights statues.  As there is no evidence that Sheriff Frank Atkinson or Captain Conger were personally involved in any of plaintiff's medical decisions and because there is no evidence of any custom or policy of Sebastian County that was a moving force behind any alleged violation of plaintiff's constitutional rights, they contend there is no basis on which these two defendants can be held liable under § 1983.  Second, defendants argue that the facts set forth in the light most favorable to the plaintiff fail to establish that they violated the plaintiff's constitutional rights because the evidence is insufficient to show that the defendants were deliberately indifferent to a serious medical need.

In the present case, plaintiff alleges that the defendants violated his constitutional rights by refusing him medical care.  He also contends that his rights were violated because the medical care

he did receive was not free.

First, plaintiff seeks to hold Sheriff Atkinson liable because they he was "in charge" of the jail and its employees. However, "[s]ection 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). It is well settled that an employer is not vicariously liable for the intentional criminal acts of his employees. *Porter v. Harshfield*, 329 Ark. 130 (1997). In order to render the employer liable, the act of an employee must be incident to the employee's duties and for the benefit of the employer. *Id.* (citing *Sweeden v. Atkinson Imp. Co.*, 93 Ark. 397, 125 S.W. 439 (1910)).

A supervisor may be held liable if he directly participated in the constitutional violation. *See Webster v. Gibson*, 913 F.2d 510, 514 (8th Cir. 1990). In addition, he may be held liable when he fails or refuses to intervene when a constitutional violation takes place in his presence. *See Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *see also Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). Additionally, a supervisor may be held liable if his failure to train or supervise the offending actor caused the deprivation. *See Tilson v. Forrest City Police Department*, 28 F.3d 802, 806 (8th Cir. 1994). "The standard of liability for a failure to train police officers is deliberate indifference." *Id.* at 807 (citations omitted). "The standard of liability for failure to supervise is 'demonstrated deliberate indifference or tacit authorization of the offensive acts.'" *Id.* (citations omitted). Finally, a supervisory official may be liable if he created a policy or custom under which the unconstitutional practice occurred. *Williams v. Smith*, 781 F.2d 319, 323-24 (2nd Cir. 1986).

A suit against the Sheriff or a Jail Administrator in his official capacity is the equivalent of a suit against the county itself. *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998). "Thus, the actions of the Sheriff will be deemed actions of the County. Additionally, in a § 1983 action, a

[government entity] may only be held liable for constitutional deprivations if the deprivation is the result of a policy or custom of the [government entity]." *Id.* at 578-79 (citation omitted). Under § 1983, a governmental entity may not be held vicariously liable for the unconstitutional acts of employees. However, a governmental entity, here Sebastian County, may be held liable for the unconstitutional acts of its officials or employees only when those acts implement or execute an unconstitutional County policy or custom. *See Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998). The county would be liable for an officer's conduct only if the subject officer were (1) a County employee or official and (2) if the officer was implementing or executing an unconstitutional county policy or custom that (3) directly caused plaintiff's injury. *See Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997). In the absence of a written policy, plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law. *See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff must show that the County "through its deliberate conduct . . . was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 526.

      Plaintiff seeks to hold Sheriff Atkinson liable because he believes the Sheriff had the "final say" regarding his medical requests and treatment. (Doc. 3). However, plaintiff has indicated that Sheriff Atkinson made no personal decisions regarding his requests. (Doc. 23). Further, plaintiff has failed to allege that Sheriff Atkinson did not properly train his deputies or that Sheriff Atkinson implemented a custom or policy that violated his constitutional rights. As such, we believe that there is no genuine issue of material fact with regard to Sheriff Atkinson's lack of liability and recommend that summary judgment be granted.

      Plaintiff also contends that Captain Conger is liable because he is the Jail Administrator.

However, he also alleges that Captain Conger informed Nurse Reed that plaintiff would have to pay for and have his family arrange an appointment for him with the urologist. Plaintiff states that Captain Conger's refusal to have the jail pay for him to see the urologist a second time constituted denial of medical treatment. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

We note that Captain Conger can not be held liable simply because he was the Jail Administrator. Similarly, we can find no evidence to show that Captain Conger was deliberately indifferent to plaintiff's medical condition. The evidence shows that plaintiff was seen by the urologist on one occasion while at the SCDC and was treated by the prison doctor, Dr. Tinsman, on at least four other occasions. In fact, plaintiff was seen by both Nurse Reed and Dr. Tinsman on occasions after he asked to see the urologist. While we do note that plaintiff may not have been allowed to see the doctor of his choice, we can not say that Captain Conger denied him medical treatment. Clearly, Captain Conger continued to allow plaintiff to be seen by both the prison doctor and the nurse. Because prisoners do not have a constitutional right to see a doctor of their choosing, Captain Conger's refusal to allow plaintiff to see the urologist free of charge did not violate his constitutional rights. *See Kinney v. Kalfus*, 25 F.3d 633, 634-635 (8th Cir. 1994) (holding that

prisoner's do not have a constitutional right to choose their own health care provider). Accordingly, we recommend granting the defendants' motion for summary judgment as to Captain Conger.

Additionally, plaintiff alleges that Nurse Reed violated his constitutional rights by denying him medical treatment. We note, however, as do the defendants, that plaintiff has repeatedly stated that he does not contend that the jail doctor or jail nurses were deliberately indifferent to his serious medical needs. (Doc. 6, 23). As such, we can find no genuine issue of material fact concerning Nurse Reed's liability. Accordingly, we recommend that the defendants' motion for summary judgment be granted.

### IV. Conclusion

Therefore, I recommend that the defendants' motion (Doc. 19) for summary judgment be granted and this case be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this <u>21st</u> day of December 2006.

<u>/s/ Beverly Stites Jones</u>
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE
